TOLEDO, FOR THE USE OF MACGAHAN, V. SAMUEL A. FORD ET AL.

TRUNK SEWERS—FINDING OF ASSESSING COMMITTEE CONCLUSIVE.

All the land within a sewer district in the city of Toledo may be assessed for a general or trunk sewer constructed within such district, and the finding of the assessing committee with reference to the special benefits which will accrue to the several parcels of land within the sewer district is conclusive, in the absence of fraud or great oppression.

APPEAL.

HAYNES, J.

This case comes into this court on appeal, and is an action brought for the purpose of enforcing certain sewer assessments within the city of Toledo.

The petition sets up that there is a sewer district within the city of Toledo, called and denominated sewer district number 26. That sewer district lies in the westerly portion of the city—perhaps abuts on the westerly line of the city—and lies between Central avenue and Auburn avenue and other streets named, being east of the wagon works, reaching over to Woodlawn Cemetery and extending in an easterly direction over to Bancroft street and then following along another street therein named, comprising a very large sewer district.

Proceedings were had in the common council whereby it was ordered that there should be a main sewer constructed within the district, commencing in the neighborhood of the Milburn Wagon Works and extending through certain streets and emptying into Ottawa river or Ten Mile creek. The country around about this section is table-land, but as it approaches Ten Mile creek it descends, by rather an abrupt bank to the low grounds abutting upon the river. This sewer was ordered to be constructed and contracts were let in due form according to law, the work was performed and a final estimate was made. That estimate was made upon the whole of this district, as we understand, at least it was ordered to be made upon the whole sewer district, and it is not shown that it did not cover the whole sewer district, it included, however, in this district the lands about which the controversy has arisen. These lands lie, a part of them, upon this high table-land, a part of them being—as is testified here—treated as acre-land, and a portion is the low ground adjoining the river or creek, and there is descending from these table-lands, at one point, a ravine running down to and into the low lands.

The contention of counsel for the defendants in this case is, that this property is not benefited by this main sewer, they claiming that it furnishes no drainage for the low lands and practically no drainage for the high lands, or perhaps I should say that the high land, by virtue of its elevation, and the ravine has already sufficient drainage.

The case was heard upon evidence. It was claimed that this sewer was simply a sewer for surface drainage; that the parties who owned the land and sold the lots in question had no right to drain into it or to use

the sewer for house drainage; but we find upon examination of the testimony that this is not true. Under the statutes of the state when the city desires to make drainage in a city, the matter is to be submitted to the board of health, and the board of health at first decided against allowing this main sewer to empty into Ten Mile creek, but afterwards, upon a hearing, they allowed it to be so used until such time as they should order another outlet to be built; so that so far as appears at present, the sewer is used for all of the purposes of a sewer—for surface drainage and for house drainage also.

It is claimed that it is impossible to drain many of the lands and lots into this sewer, and the statute is invoked which provides that where lots and lands cannot be drained, or where they have sewerage already provided, no assessment can be made. But, without discussing this matter to any length, we think counsel for defendant have, as we understand their arguments, at least, taken an erroneous view of these assessments. It is not an assessment for local drainage and is not attempted to be. The ordinance does not provide for anything of that kind; it is an assessment in a sewer district for the building of a trunk sewer through that district, an assessment which is ordered by the common council and is an assessment upon all the lands within the district which are benefited for the purpose of building this sewer. We have been cited to 45 Ohio State and to the decision of the court in that respect, with regard to charging for local sewerage where there is a district sewer. That question does not arise here, for there is no attempt here to make or assess for local sewerage.

The statute referred to is sec. 2380: "The assessment shall not exceed the sum that would, in the opinion of the council, be required to construct an ordinary street sewer, or drain, of sufficient capacity to drain or sewer such lots or lands; nor shall any lots or lands be assessed that do not need local drainage, or which are then provided therewith; and the excess of the costs, over the assessment herein authorized, shall be paid out of the sewer fund of the corporation."

Now that was the general statute. That is the statute under which the decision in Newell v. Cincinnat, 45 Ohio St., 407, proceeded and which was construed. In that case there had been a sewer district made and the council had attempted to assess for local drainage $2.00 per front foot, which it said was to be used for building the sewer. The sewer was located on the heights above Cincinnati; and forty years ago, there was a creek passed by there, called Deer creek, and the parties to the suit had built upon these heights and at their own expense had built sewers into Deer creek and their property had all the sewerage needed. That case decided that these lots could not be charged for local sewerage, that it must be paid out of the general sewerage fund. In all cities but the city of Toledo, of which I know, a sewerage fund is provided under this general statute by taxation—either by taxation upon the property in the respective sewer districts or upon the whole of the property within the city—that is to say, the money to make the trunk sewers and lay sewers and the general sewerage, is raised either by general taxation upon such districts or upon the whole city, the same as money is raised to sustain the fire or the water departments of the city. But Toledo seems in municipal legislation to be always blessed with something peculiar to herself. She had this law amended, and in its terms it applies, of course, to cities of the third grade of the first class, but, as that only covers Toledo, it is a local statute. Now it proceeds to say: "or in cities

MacGahan v. Ford.

of the third grade of the first class, if the council so determine, may be assessed in addition to other taxes now authorized by law, on all the real property in the sewer district in which said sewer is or may be constructed according to benefits," and it then proceeds to tell how to borrow money—for the purpose of raising money with which to build the sewer. It was under this statute that the council proceeded to order this assessment made upon the property within this sewer district.

Now, while it is said that it should be made according to benefits and being called an assessment, it is treated as proceeding upon the same general principles as all assessments proceed, to-wit, because of the benefits which accrue to the property—nevertheless, it is in substance a method of raising money for the purpose of building a general trunk sewer in the sewer district, the same as is raised by a sewer fund in other cities, under the general statutes of the state. It is a tax upon the property in that district for the general purposes of a sewer, and it is to be sustained upon the same principles that we sustain a tax for a fire department or a tax for a water department or a tax for a police department, the money is raised for sanitary purposes, for the protection of the health of the inhabitants of the city of Toledo, and every man who owns a foot of property in the city is interested in having sewerage of that kind—a general system, for the protection of the health of the city.

When they came to make this assessment, the parties who were appointed proceed to make this general assessment, and they assessed upon this property which abuts upon the creek and through which this trunk sewer passes, a small sum of money. Now that trunk sewer, when it comes down out of this table-land crosses this low land to the creek, and the bottom of the sewer there is not over eight or nine inches below the surface of the ground, and as it is a fifty-four inch sewer inside substantially the whole of the sewer lies above ground, there is no question about that; but there is no attempt to drain into it locally, it is not designed for local drainage. It is not expected that it will be drained into. The tax is made under that general provision that taxes the whole district for the general good of the property within the district.

Of course it is difficult to say just how much any of these lots or lands are benefited, but the assessors did proceed to make discriminations and assess some lands more than others, discriminating on account of the locality of the property and its relation to the sewer and the probable benefits of the sewer to the property assessed.

In regard to these assessments the law of Ohio has not been changed. This assessment was made by the city authorities and made with reference to the special benefits which will accrue to the property. The finding of the assessing committee upon that point is conclusive upon this court, unless there is shown to be fraud or great oppression. That is decided in perhaps 34 O. S. Upon examination of the facts of this case we think the assessments are very fairly and justly made; that this court could not make any better if it should try. We think the plaintiff entitled to a judgment against these lands for the amounts respectively assessed, which are recited in the petition, and judgment will be entered accordingly.

*P. A. MacGahan*, for the plaintiff.
*S. A. Ford* and *C. F. Watts*, for the defendants.